HAMITER, Justice.
 

 In this suit, plaintiffs, who are the heirs of Desire L. LaGraize and Mrs. Alice Bergeron LaGraize, seek to set aside certain powers of attorney, leases, mineral deeds and other documents which they, together with the said Mrs. LaGraize, -executed in
 
 *491
 
 favor of defendant, James J. Tracy, an attorney at law of the New Orleans Bar. Others cited as defendants are the Lafourche Petroleum Company, Miss B. Esma Newhauser, Miss Miriam R. Newhauser, and S. R. Coulon, all of whom are alleged to be transferees of Tracy.
 

 As to the cause of action forming the basis of the demands of plaintiffs, the brief of their counsel states: “ * * * The suit arises out of an attorney-client relation, and charges the principal defendant, James J. Tracy, with having abused his position as attorney for his own benefit, and to the detriment of plaintiffs who were his clients. * * * Plaintiffs base their prayer for relief on the fact that defendant Tracy obtained said agreements and documents by misrepresentation and by abuse of his position as their attorney. * * * Plaintiffs are particularly aggrieved by a so-called ‘Agreement and Assignment’ of Aug. 3, 1936 (Tr. Vol. 1, p. 60), and ‘Extension’ of March 6, 1939 (Tr. Vol. 1, p. 64) which purport to extend the primary terms of leases, which ‘Extension’ was for the sole benefit of James J. Tracy and was signed by said James J. Tracy as attorney in fact for plaintiffs, without their knowledge or consent.”
 

 All of the charges made by plaintiffs were denied by the defendants in their answer.
 

 After the trial of the case, which consumed' almost five weeks and resulted in the building of a voluminous record, there was judgment rejecting the demands of plaintiffs, the trial court holding that they had not “established the essential facts necessary to obtain the relief prayed for.”
 

 Following the taking of an appeal to this court by plaintiffs, appellees moved to dismiss it on March 5, 1947, alleging that the record was not timely filed. In denying the motion, 211 La. 765, 30 So.2d 828, we pointed out that appellees had tendered a previous motion (February 5, 1947) in this court suggesting that the transcript was incomplete and praying that appellants be ordered to show cause why the omitted documents should not be included therein; then we ruled: “Since appellees have taken a position inconsistent with the dismissal of the appeal, they are now precluded from having the appeal dismissed.” 211 La. 765, 30 So.2d 828, 829. Subsequent to that ruling, appellees filed another motion to dismiss the appeal in which they now contend that appellants, in petitioning for the appeal, did not cause to be cited defendant Miriam R. Newhauser, in whose favor the district court rendered an indivisible and inseparable judgment. This defendant was a party to the motion respecting the completion of the transcript, and for the reasons given in connection with our previous ruling the present motion to dismiss must and will be denied.
 

 Addressing ourselves now to the merits of the case, we find that in the year 1895, Desire L. LaGraize purchased at a tax sale, under an assessment to the estate of Jules Lapene and for unpaid taxes of 1894, a
 
 *492
 
 number of tracts of land in Lafourche Parish totaling, according to the deed evidencing the sale, approximately 1591.87 acres. Later (May 14, 1904), Desire L. LaGraize sold several of these tracts (a total of about 530 acres) to Dr. J. E. Blanchard, Jr. And on his remaining land he, in 1928, granted an oil gas and mineral lease, for a primary term of five years, to E. F. Simms. The instrument particularly described the property affected and then stated, “Sea Marsh total acres 1080, more or less.” This lease, subsequently, was acquired through assignments by the Southern Sulphur Corporation and the Prince Oil Company, Inc.
 

 Shortly after his execution of the mentioned Simms lease, LaGraize sold to S. A. Guidry, Dr. Thomas Stark and P. C. Authement “an undivided one-half (%) interest in and to all the oil, gas, sulphur and other minerals on, in and under * * *” almost all of the leased lands.
 

 In 1934, after the death of Desire L. LaGraize which occurred in 1931, the decedent’s widow accepted rental payments under the Simms lease, notwithstanding that its primary term had expired; and because of the acceptance the assignees of Simms were contending that such lease was then in full force and effect. Whereupon Mrs; LaGraize and her children asked a friend of the family to obtain for them the services of an attorney, and he, in compliance with the request, suggested and introduced the principal defendant herein, James J. Tracy.
 

 Following the introduction, the widow and heirs of Desire L. LaGraize executed a power of attorney or what was styled a “Procuration” (there were two identical instruments, one of which was signed on April 11, 1934, by the widow and heirs living in or near Thibodeaux and the other on April 16, 1934, by the heirs living in or near New Orleans). In the procuration the signers appointed James J. Tracy as their true and lawful attorney in fact and granted to him certain powers. Further, the following was contained therein:
 

 “#1. The aforesaid powers granted herein to said attorney in fact are to be confined to any and all matters of every nature and kind whatsoever, in connection with the:
 

 “1. Opening of the succession of Desire L. LaGraize.
 

 “2. Putting in possession, all heirs in connection therewith.
 

 “3. Emancipation of the minor Albert LaGraize.
 

 “4. Clearing the following described land and the public records in connection therewith, without any admission whatever on the part of the said constituents as to the force, effect or validity of one certain oil, gas and sulphur lease executed by Desire L. LaGraize in favor of E. F. Simms, his successors and assigns, under date of
 
 *493
 
 February 25th, 1928, and recorded in the Records of Lafourche Parish, Louisiana, No. 15563, on May 19th, 1928.
 

 “All of the above in connection with the following described land, to-wit: (Here follows the identical description contained in the Simms lease, with this added statement : “ * * * and this to include all the lands whether properly described herein or not which the said Desire L. LaGraize purchased at a tax sale June 22, 1895, C. B. 29 — Folio 54.”)
 

 “#2. It is hereby agreed by said constituents that this power of attorney, being coupled with an interest, is irrevocable.
 

 “#3. It is agreed by said constituents that the services to be rendered by the said James J. Tracy, attorney-in-fact, are valued at the sum of $5,000.00. In consideration of said above services being rendered by the said James J. Tracy, the said constituents hereby contract, agree and bind themselves :
 

 “(a) To execute in favor of the said James J. Tracy, a customary oil, gas and sulphur mineral lease, carrying the customary royalty to the said constituents, on all of the aforesaid land of every kind and character; said mineral lease to be for a period of five years from date thereof, and, as further consideration for said services being rendered by said James J. Tracy, said mineral lease is to be free of any and all rentals payments during the term thereof.
 

 “(b) To execute in favor of the said James J. Tracy, a mineral deed conveying a one twenty-fourth (l/24th) mineral interest in and to all of the minerals of every kind and character in, on and under all of the aforesaid land, less amount previously sold.”
 

 The mentioned lease and mineral deed in favor of Tracy were executed simultaneously with the procuration’s signing.
 

 In August, 1934, the widow and heirs amended the lease granted to Tracy so as to relieve him of the drilling obligation therein stipulated, and also they amended the mineral deed by providing that it should cover the mineral interests previously sold by Desire L. LaGraize on the reversion thereof by reason of forfeiture.
 

 In the meantime, Tracy was engaged in performing the four tasks enumerated in the procuration. He opened the succession of Desire L. LaGraize, had the heirs placed in possession of decedent’s property, obtained the emancipation of the minor, Albert LaGraize, and instituted suit (May 17, 1934) to secure the cancellation of the Simms lease. The litigation resulting from this last mentioned action was terminated in September, 1934, through the signing of documents by the assignees, Southern Sulphur Corporation and Prince Oil Company, Inc., releasing, relinquishing and surrendering their interests in the Simms lease.
 

 During Tracy’s performance of those services, however, a claim was made by the Louisiana Land and Exploration Company to a large portion of the land to which the widow and heirs asserted ownership, and,
 
 *494
 
 as a result of this claim, they executed in favor of Tracy on November 10, 1934, a document reading in part as follows :
 

 “Whereas, since the signing of said Acts of Procuration, it has now just been discovered by the parties of the first and second part, that certain lands belonging to the parties of the first part, has been claimed by the Louisiana Land & Exploration Company of New Orleans and elsewhere; said lands being described as follows, to-wit:
 

 “(Here follows a description of the land.)
 

 “Whereas, the recovery and/or clearing of said above cloud on said title of parties of the first part, of the hereinabove described lands or any part thereof, all originally covered under and by the above referred to Acts of Procuration, was not contemplated, nor was any agreement to recover and/or remove said above cloud on said title entered into under the terms and conditions of said Acts of Procurations, it being definitely understood by all parties thereto at said above time that said parties of the first part had a good and clear title to all of the lands as described and covered by said Acts of Procurations, and,
 

 “Whereas, the party of the second part (James J. Tracy) is now called upon by parties of the first part, to perform extensive additional services and incur additional heavy expenses, due to it now having become necessary to recover and/or remove said above cloud from said title to said above lands, and,
 

 “Whereas, it now becomes necessary to amend said Acts of Procurations in order to include the said above recovery and/or clearing of said above cloud to said title to said lands, and to extend any and all powers granted to said attorney in fact therein, so as to include any and all matters in connection with the said recovery and/or removing said cloud, and,
 

 ‘‘Therefore, in consideration of the extensive additional services rendered and to be rendered and the heavy expenses incurred and to be incurred by the party of the second part, in recovering, and/or removing cloud from, said title to said above lands, receipt of which is hereby acknowledged, and for other good and valuable consideration, the parties of the first part do by these presents, sell, assign, set-over and deliver unto the party of the second part fifty (SO) per cent undivided interest, in fee simple, in and to all of the lands recovered, and/or upon which lands the cloud on the title has been removed.”
 

 Pursuant to this agreement, Tracy, along with Attorney George Seth Guión whose legal services he had enlisted, brought suit on March 13, 1935, in the 17th District Court of Lafourche Parish praying for a judgment recognizing the widow and heirs to be the owners of the disputed property. The suit was removed to the United States District Court for the Eastern District of Louisiana on the petition of defendant, and on April 30, 1937, that court rendered and signed a judgment dismissing it and re
 
 *495
 
 jecting- the demands of plaintiffs. This judgment was affirmed by the United States Circuit Court of Appeals, Fifth Circuit, on March 4, 1938.
 

 While that litigation was pending, specifically on August 3, 1936, the widow and heirs entered into another agreement with Tracy. Therein reference is made to the acts of procuration of April 11 and 16, 1934, and then it is stipulated that since the signing thereof “ * * * it has now just been discovered by the parties hereto that * * * ” certain lands belonging to the widow and heirs had been omitted from the succession proceedings of Desire L. LaGraize. The omitted lands, which are described in the act, are located near the Town of Golden Meadow. Further, the agreement provides:
 

 “Whereas, the party of the second part (James J. Tracy) is now called by the parties of the first part to perform extensive additional services and incur additional heavy expenses, due to it now becoming necessary to re-open said above succession proceedings in order to include said above lands or any part thereof, and further, to remove any and all clouds that may exist against the title of said parties of the first part to said lands.”
 

 And it concludes:
 

 “Therefore, in consideration of the extensive additional services rendered and to be rendered, and the heavy expenses incurred and to be incurred by the party of the second part, (James J. Tracy) in connection with the re-opening of the succession of the said Desire L. LaGraize, and in recovering and/or removing any and all clouds against the title of the said parties of the first part to said hereinabove mentioned lands, receipt of which is hereby fully acknowledged, and for other good and valuable consideration, the parties of the first part do by these presents sell, bargain, grant, convey, transfer and deliver unto the party of the second part (James J. Tracy), an undivided fifty (50%) per cent interest, in fee simple, in and to any and all of the said above described lands, or any part thereof, which may be recovered, and/or upon which lands or part thereof the clouds or cloud on said title thereto has been removed -or cleared.
 

 “In consideration of the same consideration herein expressed above, the parties of the first part hereby and hereunder extend the primary term of said mineral leases executed by and between themselves and the party of the second part, under date of April 11th and 16th, 1934, respectively, and recorded in the conveyance records of the said Parish of Lafourche, Louisiana, on June 4th, 1934, in C. B. 71, Folios 410 and 412, entries Nos. 26703 and 26704, so as to include any and all time lost or delays occasioned by any and all litigation connected with any and all lands covered thereunder and/or the royalty rights therein or thereon; the said extension of said primary term of said mineral lease as above to include the entire lease as a whole in every respect,
 
 *496
 
 it being further understood by the parties hereto that said above described above lands or any part thereof are to be included in and covered under, and are included in and covered under, said above mentioned mineral leases.”
 

 With reference to the Golden Meadow acreage, referred to in the August 3, 1936, agreement as having been omitted from the succession proceedings, Tracy after numerous conferences and considerable effort (which will be more fully discussed hereinafter) was successful in obtaining from the Register of the State Land Office a corrected patent in favor of Jules Lapene (through whom the LaGraize heirs are claiming) describing land of which the omitted property was a part; further, he secured an ex parte judgment placing the widow and heirs in possession of it. The remaining part of the agreement of August 3, 1936 (that dealing with the extension of the lease), will likewise be considered more fully hereinafter.
 

 Furthermore, during the pendency of the Louisiana Land and Exploration Company litigation, the persons who had acquired mineral interests from Desire L. LaGraize in 1928 (or their heirs or assigns), were asserting those interests, and on November 1, 1936, they granted to the Helis Petroleum Corporation an oil, gas and mineral lease on part of the LaGraize lands covered by Tracy’s lease and mineral deed To obtain a cancellation of the Helis Petroleum Corporation’s lease, Tracy, together with the law firm of Guión and Schulze, instituted a slander of title suit on April IS, 1937.
 

 Before the termination of that suit, James J. Tracy, acting as attorney in fact for the widow and heirs of Desire L. LaGraize, executed on March 6, 1939, in favor of himself individually an instrument styled an “Extension.” Therein, reference is made to the leases granted to Tracy of date April 11 and 16, 1934; and the following, which relates to those leases, is then stipulated:
 

 “That Whereas, the aforementioned owners and co-owners, executed an ‘Agreement and Assignment’, of date August 3rd, 1936, to the aforementioned James J. Tracy, individually and as Lessee, his heirs, successors and assigns, and recorded in the Conveyance Records of the Parish of Lafourche, Louisiana, C. B. 77, Entry #32224, on, August 12th, 1936, in which the parties thereto agreed, and did, extend the ‘Primary Term’ of the mineral leases hereinbefore mentioned, so as to cover time lost or delays occasioned by any and all litigation connected with any and all lands thereunder and/or royalty rights therein or thereto. The said extension of said ‘Primary Term’ of said mineral leases as above mentioned, to include the entire leases as a whole in every respect.
 

 “Now Therefore, in full accordance with hereinbefore mentioned ‘Agreement and Assignment’ of date August 3rd, 1936, I, James t J. Tracy, acting in my duly authorized capacity as attorney-in-fact of aforementioned owners and co-owners, by
 
 *497
 
 virtue of aforementioned Irrevocable Acts of Procuration, hereby extend the ‘Primary Term’ of aforementioned mineral leases to cover the time lost and delays occasioned as outlined in said ‘Assignment and Agreement’ of August 3rd, 1936, whereby said ‘Primary Term’ of aforesaid mineral leases is now, by these presents, extended in its entirety, to and including April 11th and 16th, 1943.”
 

 ’ This extension, which is vigorously assailed by plaintiffs herein, was recorded in the Conveyance Records of Lafourche Parish on March 8, 1939, and on the following day Tracy mailed to Mrs. LaGraize a copy of it.
 

 On May 4, 1940, Mr. A. D. Danziger, the attorney who instituted the present action on behalf of plaintiffs, addressed a letter to Mr. Tracy informing him that the LaGraize heirs (Mrs. Alice Bergeron LaGraize died Augu'st 25, 1939) desired “ * * * to give notice that any and all forms of powers of attorney heretofore executed between you and them are revoked and it is their desire that you take no further steps in connection with their property, either as attorney or otherwise.” And on July 26, 1940, there was recorded in the Conveyance Records of Lafourche Parish an instrument signed by all of the LaGraize heirs in. which they expressly approved the mentioned letter (it was quoted in full) and then gave notice to whom it may concern that all agreements between them and Tracy (they were particularly referred to therein) were cancelled and revoked. Further, the instrument evidenced a contract of employment between the heirs and their present counsel.
 

 The instant suit was instituted on July 3, 1941, and on July 8, 1941, a notice of lis pendens was recorded in the mortgage records of Lafourche Parish.
 

 The litigation, as we appreciate the allegations of the petition and the argument made in behalf of plaintiffs, presents only the issue of whether or not the attacked documents (procuration, lease, mineral deed, agreements and extension) were obtained by Tracy through misrepresentations and by abuse of his position as attorney for the LaGraizes. In addition to the extracts quoted hereinabove, which clearly sustain our conclusion as to the issue presented, the following appear in the briefs submitted in behalf of plaintiffs: “We contend that undue influence was exercised by Tracy. * * * In final analysis, the legality and validity of the contracts under investigation revolve upon Tracy’s compliance with his duties as an attorney dealing with his clients. * * * At the very core of this suit, however, is the fiduciary relation of attorney and client. All dealings attacked in this suit were made under the influence of, with regard to, and as a result of said fiduciary relation. And the transactions between plaintiffs and Tracy were attacked because they were made under the influence of said fiduciary relation. In short, it is not our main contention
 
 *498
 
 that said contracts are voidable as such, but that they should be set aside because they were induced and brought about by, and resulted from, the fiduciary relation.” Hence, we are not called upon, and do not attempt, to determine whether or not such agreements and other documents'are otherwise valid and effectual.
 

 The charge of abuse and undue influence does not seem to concern directly the confection of the original procuration, lease and mineral deed, for practically all of the heirs admitted during the trial of the case that they knew the employment agreement provided for Tracy’s performing four legal services, viz.: opening the succession, having the heirs placed in possession, securing the emancipation of the minor, and obtaining the cancellation of the Simms lease; and they have not denied that these tasks were accomplished satisfactorily and within a reasonable period of time. The complaint is that the heirs are plain, uneducated persons ; that on their signing the original documents Tracy promised to make them rich from oil returns within 30 or 60 days; that they were induced to execute the subsequent agreements, which were prepared by Tracy, without being advised correctly of the contents and consequences of the same; that some of the later documents were inconsistent with the initial agreement and understanding of the parties; and that although Tracy has secured benefits for himself from the mineral interest acquired he has failed to obtain any revenues for them during the 13 years elapsing after the date of the original procuration.
 

 As to the suggested lack of education on the part of plaintiffs, the trial judge, who saw and heard them testify, observed in his written reasons for judgment that they “are country people with some degree of education and intelligence.” From our study of their testimony (there are hundreds of pages of it in the voluminous record) we have reached the same conclusion. In answering the questions propounded they generally were alert and self-possessed, not confused; they testified coherently and intelligently; and they used language not typical of the uneducated person. Moreover, the evidence suggests that they are not the type that is ordinarily easily imposed on or influenced, for during the period of Tracy’s representation of them they were continually calling on him for information about the success of his efforts and for explanations concerning delays.
 

 Of course, many of the plaintiffs testified that Tracy, on their signing of the original procuration, the lease and the mineral deed, promised that they would receive large financial returns in 30 or 60 days. But some of these same persons, as well as others, stated also that they signed because of their mother’s wish that they do so. Then, too, there is much correspondence in the record that passed between plaintiffs and Tracy in none of which is this 30 or 60 day promise mentioned. Furthermore, one of the plaintiffs testified that
 
 *499
 
 he knew that an oil well could not be brought in during such a short period of time.
 

 But even if Tracy did state, when the original acts were signed, that early financial returns from the property were expected, obviously the statement was only an opinion based on the supposition that no complications would arise in performing the four services specified in the procuration and that the property would not become involved in the litigation that subsequently developed.
 

 It is the testimony of some of the plaintiffs, too, that Tracy was in a hurry whenever he sought their signatures to the agreements and that he failed and refused to advise them of the legal consequences of the documents. However, in opposition to this, not only Tracy but also other persons who were present when practically all of the instruments were executed testified that the agreements were read and explained fully, both in English and in French, on the occurrence of the signing.
 

 Then there is criticism of Tracy for his having instituted and lost the Louisiana Land and Exploration suit. Clearly the suit was justified, for that company was claiming a large part of the land to which the LaGraizes asserted ownership; and plaintiffs authorized its institution. The fact that the suit was lost is of no consequence insofar as the issue herein is concerned; it is not shown that Tracy, together with his associate therein George Seth Guión, intentionally mismanaged the litigation. Rather, it must be assumed that Tracy did his best to achieve success; he sustained a loss in the property along with the LaGraize heirs and, further, all of the costs of the proceedings were borne by him.
 

 Coming now to the August 3, 1936, agreement, we consider first that part which relates to the land located near Golden Meadow that was omitted from the succession proceedings and in which Tracy was granted a 50% interest upon the recovery thereof. It is contended by plaintiffs’ counsel that the inclusion of that grant in the agreement evidences Tracy’s taking of undue advantage of the LaGraizes, because the original procuration, in connection with which he was given the lease and mineral deed, contemplated his recovery that property or clearing the title thereto and he was not entitled to additional compensation. As before shown, the original procuration named four services to be performed by Tracy, and then it particularly described the property affected (but not the Golden Meadow lands). To the description, however, there was added: “ * * * and this to include all the lands whether properly described herein or not which the said Desire L. LaGraize purchased at a tax sale June 22, 1895—C.B. 29 —Folio 54.” By reason of this added clause counsel contends, that the procuration affected the Golden Meadow acreage. Notwithstanding the broad scope of the clause and also the fact that whatever lands De
 
 *500
 
 sire L. LaGraize owned was acquired in the mentioned tax sale, we are satisfied that the inclusion of the acreage in question in the procuration was not within the contemplation of the parties. In the first place the deed evidencing the tax sale did not definitely and accurately describe that acreage. Secondly, Desire L. LaGraize seemingly had conveyed in 1904 to Dr. J. E. Blanchard, Jr., a total acreage, in the two sections wherein the Golden Meadow property is situated, much in excess of the amount in those sections which the tax deed of 1895 called for; and, under these circumstances, it may be assumed that the LaGraizes were making no claim to the Golden Meadow acreage when the procuration was executed. Thirdly, the agreement of November 10, 1934, respecting the ■ claim of the Louisiana Land and Exploration Company, clearly discloses an intention of the parties that the original act of procuration should cover only lands to which the LaGraizes had a good and clear title.
 

 On discovering that the LaGraizes might be able to recover the Golden Meadow acreage, and after the execution of the agreement of August 3, 1936, Tracy proceeded at his own expense to abstract the title, obtained various necessary certificates and other documents, made several trips to Baton Rouge and held conferences with the Attorney General and the Registrar of the State Land Office, caused the making of a survey of the land, and eventually secured a corrected patent in favor of Jules Lapene (ancestor in title of Desire L. LaGraize) which included the omitted property. These efforts, along' with the expenditures made in connection therewith, clearly constituted a real consideration for the agreement in question. But it is not at all certain that his work has been completed and will prove beneficial to the LaGraizes and himself in view of the indefiniteness of the tax deed description and the conveyance in 1904 to Dr. Blanchard.
 

 Neither can we conclude that the-remaining part of the August 3, 1936, agreement evidences Tracy’s'taking advantage of the widow and heirs of Desire L. LaGraize, as contended. The part referred to purports to extend the primary term of the lease granted to Tracy in April, 1934, “* * * so as to include any and all time lost or delays occasioned by any and all litigation connected with any and all lands, covered thereunder and/or the royalty rights therein or thereto * * Although we do not determine herein the full effect of the purported extension, it appears to be supported by a valid consideration. The instrument itself recites that it was granted for the additional services rendered by Tracy, as well as the funds expended, in seeking to recover the Golden Meadow property, and for other good and valuable considerations. By this, last provision, undoubtedly the parties had. in mind the fact that Tracy’s lease (given originally for his performance of the four agreed legal services) had been of no value-
 
 *501
 
 because of the adverse claims and the litigation affecting the properties covered thereby, and further that it would continue to be valueless and unmarketable so long as the then pending litigation endured.
 

 The last instrument complained of by plaintiffs is that styled “Extension” (above quoted) .which was executed on March 6, 1939, by Tracy, as attorney in fact for the LaGraizes, in favor of himself individually. Unquestionably, it was an unusual instrument; but it in no manner prejudiced the rights of the LaGraizes, nor was it executed, in our opinion, with the view of affording some advantage over them. The document, a copy of which Mrs. LaGraize received immediately after its recordation, specifically referred to the extension agreement of August 3, 1936, and purposed only to definitely fix the period of the extension, the duration of which could not be determined in 1936. The period fixed (time lost by reason of the litigation) was four years, and plaintiffs do not insist that such was excessive. As to the legal effect of the instrument, which was merely a self-serving declaration, it could serve only as an estoppel against Tracy to claim any greater extension than that set forth therein.
 

 Finally it is argued on behalf of plaintiffs that for more than 13 years they have been deprived of oil revenues from the property. But this argument overlooks the fact that during the first six years of such period Tracy’s lease was unmarketable because of the adverse claims made against the property covered, and that during the last seven years (beginning in 1940), when there was placed of record the agreement between plaintiffs and their present attorney) it has been of no value by reason of the instant litigation.
 

 In conclusion, it may be observed that the principal issue in this case is one of fact, determinable largely from the testimony of the numerous witnesses, and that after our careful and thorough consideration of such evidence we are unable to conclude that the district court manifestly erred in resolving the issue in favor of the defendants.
 

 The judgment is affirmed.
 

 BOND, J., absent.